Good morning, Your Honor. Richard Gardner for the claimant, Mr. Brown. This is a forfeiture case, and there are quite a few issues, and given the limited time, I'm probably not going to get to all of them, but let me start with what I think is the most significant issue from a legal perspective, and that is the question of whether the district court could defer to the government's interpretation of the statute in this case. The district court, in its opinion, stated that it applied an arbitrary and capricious standard and gave considerable weight to the government's interpretation, and for a number of reasons, that is the wrong standard to apply. First of all, this is a criminal statute. It's a tax statute, and in the Supreme Court case of United States v. Thompson & Center Arms Company, decided in 1992, the Supreme Court interpreted the same section of the code, albeit a different subsection, but the same section, and essentially set the standard for how you construe that particular provision of the code. And the court said that you, first of all, apply ordinary rules of statutory construction, and then, if there is ambiguity, you apply the rule of lenity, and the reason for that is that, as the court said, although this is a tax statute construed in a civil setting, which is what we have here, the NFA, the National Firearms Act, has criminal applications, and so the court applied the standard rules of criminal statutory construction. More recently, in 2004, in Leocal v. Ashcroft, the court unanimously adopted the principle from the Thompson Center case, saying that when we're dealing with a criminal statute being construed in a civil context, which is the case here, that if you use ordinary rules of statutory construction, and if there's ambiguity, then the rule of lenity kicks in. And the lower court believed that Chevron was the applicable standard here. It is not, because, first of all, because this is a criminal statute, but also because Chevron, and there's a very recent case from the Supreme Court, the Gonzales v. Oregon, which came out of this court. I sent a letter of notice to the clerk a couple of weeks ago about that case, and the Supreme Court, I think, further clarified, if there was any doubt left, as to what Chevron deference applies to. First of all, of course, it deals with civil statutes. This is not a civil statute, so right from the get-go, Chevron deference doesn't apply. But, moreover, the court made clear, not only in Chevron, but in all the cases since Chevron, including the Gonzales case, that, first of all, you have to have an ambiguous statute before you even talk about Chevron deference. And the government in this case has not made any assertion that this statute is in any way ambiguous. So even if Chevron deference were relevant, which it's not, because this is a criminal statute, it wouldn't apply here because there's no allegation, there's no assertion of ambiguity. And, in addition to that, to make it even clearer that Chevron deference doesn't apply here, the court in Gonzales went on to quote from its prior decision in Mead and indicated that you can only talk about deference when you're talking about a regulation which interprets a statute where there has been authority by statute to promulgate the regulation. And, again, in this case, we're not talking about a regulation. We're talking about a construction of the words of the statute itself. This is really equivalent to the letter opinion that the Supreme Court talked about in the Christensen case, where the court said that the courts do not defer to letter opinions of the government. And that's really what we have here in the form of this firearms technology branch report, is a letter opinion. And so even if Chevron deference applied, even if this is an ambiguous statute, which it doesn't and it isn't, Chevron deference doesn't apply because we don't have we have a letter opinion here and not a regulation. Ginsburg. Would you address two points, please? One, what about Skidmore considerations, Skidmore-Mead, and then also the court cases that determined that the statute actually wasn't ambiguous in the interpretation of the statute? I'm sorry. I didn't hear the latter half of it. The court cases where they determined the statute wasn't ambiguous and they just interpreted the words of the statute. Wasn't ambiguous? Right. Like the Eighth Circuit case, I believe. The Eighth Circuit case. The only case, the U.S. v. Smith case, let me take that. I'll take that first. I think the only thing to say about U.S. v. Smith, I think it was clear it was wrongly decided. I mean, there's no two ways about it in our view. If you look at the we got the briefs in the case, and it's clear that the actually in the trial court, the government witness had testified. Oh, this isn't in the Eighth Circuit opinion, but it's in the record. The government witness had testified. We can't consider that. Well, I'm just explaining why I think the case is not one this Court should follow. It doesn't take account of any legislative history of the statute, and it interprets the statute, it interprets the words of the statute contrary to the common meaning of those words. It's a hard case to explain. It's all half a page long in the federal reporters, and I think it was just clearly wrongly decided because it misconstrued the simple words of the statute. Is this really an interpretation of a federal statute that's being applied in a criminal way? Here, it's just simply a forfeiture. Correct. No one's being charged with the crime. Correct. It makes me wonder, is all of this just about who? There must be a very valuable piece of equipment for all this fuss. Well, it's not so much this particular piece, but there are hundreds and hundreds and hundreds of them out there, and there are forfeiture cases pending all around the United States. There's one pending in the Sixth Circuit at the moment. What does that concern us? We just got one. We have one. It does, Your Honor, ask why this was significant, and that's part of the reason why it's significant. But that doesn't change the sense. But is it significant to the party? It's significant to the party, of course, because this is his property. But that doesn't. You know, here we are at the Ninth Circuit Court of Appeals arguing about whether a particular gun can be forfeited. Correct. Legal issues, Your Honor, are still significant, even though the value of the property may not be. Yeah. Significant to who? Significant to the parties and on a — again, I don't think it has any bearing on what the legal issues are, but significant in the broader sense of whether the government has this kind of authority under the statute to say what it believes is a machine gun and to — for the court to defer to that interpretation. That's obviously a very significant issue nationwide, and not only in this circuit, but in many circuits. Is it fair to register a crime? Fair to register if it's a machine gun, yes. Uh-huh. But the government has to prove in a failure-to-register case that the individual knew that it was a machine gun, and in this case there was no evidence that this individual knew that. I think that's why this didn't result in a criminal case. That's why it seems to me so much a civil case. It is a civil case, but the point is that the Supreme Court in the Thompson-Center case, which also involved one gun, which was worth a couple hundred dollars, the court said that, although it's in a civil setting, the rules of criminal construction apply, and again, which they reiterated strongly in the Leocal decision. So the legal issue is a significant issue. The value of the property is not. If it's — however it's interpreted here, would that have downstream consequences in criminal cases? It certainly would, absolutely. So it has — it has that impact. It would have to be proved to a certain extent. It would have — in the criminal — actual criminal case, you'd have to prove, as you pointed out, intent and a lot of other things. You'd have to prove — Now, the fact that it is a machine gun in this civil context, I don't think it would be used. Well, it's — you'd have to prove that it was a machine gun, and so you'd get to the question of the construction of the statute. So it — so it does have some impact on a criminal case. Going back to Your Honor's question, with regard — and I'm sorry, I forgot what the first part of the question was. Skidmore. Again, this — Skidmore is in the line of Chevron deference cases. It's an earlier Chevron deference case. And I don't believe, as I said, that that whole line of cases applies here in — because this is not an interpretation of a civil statute. And in Skidmore, there was a regulation promulgated pursuant to congressional authority to promulgate regulations which construed an ambiguous statutory provision. Again, we don't have any of those elements in that case. This is a criminal statute, albeit in a civil setting, and there's no assertion of ambiguity by the government. And we're not talking about a regulation construing a statutory provision. And I see my time is up. Thank you, Your Honor. Good morning. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the government. In this case, we're essentially dealing with a definitional statute. It's a statute — it's the statute that defines what a machine gun is for the purpose of the National Firearms Act. In — I guess I'll start first by addressing the deference to the Bureau of Alcohol, Tobacco, and Firearms' interpretation of the statute. In the Meade case, the Supreme Court made it absolutely clear that when you're talking about the deference to an agency's decision, it's not an all-or-nothing proposition. It's not, for example, either Chevron deference or not Chevron deference. The Court recognized that there is essentially a sliding scale, again, based primarily on the Skidmore case, that looks at, in situations where you don't have full Chevron deference, you look at the degree of the agency's care, its consistency, its formality, and its relative expertise, and as well as the persuasiveness of the agency's decision. In the — this is all set out, as I said, in the Meade case. In the Meade case, the Supreme Court was looking at the Customs Service's definition of whether a day planner met the definition of a diary. It's kind of a similar scenario to what we're dealing with here, is does something meet the definition of something. And you look, basically, under any level of analysis, and the key case in this area that gets cited over and over and over again by the courts is the Smith case from the Eighth Circuit as far as the definition of a machine gun. And in that case, the Court found — and that was a — the Smith case was a criminal case, by the way, so the government proved in that case, by the standard of beyond a reasonable doubt. In that case, the Court found, the Eighth Circuit found, that a firearm was readily restorable as a machine gun, notwithstanding the fact that it would take an eight-hour day working in a well-equipped machine shop to accomplish that task. In the Instant case, what we have when we're dealing with, in this case, the firearm at issue, which, according to the evidence in the record, the claimant paid about $300 or $400 for, was a gun that was put together from two — basically two halves of an M14. Now, an M14 is a military rifle that, as it's originally designed, can shoot either automatically or semi-automatically. In this case, when the Army is through with them, when the military is through with them, they basically cut them in half. The manufacturer of the gun at issue in this case got a bunch of these halves, welded the two halves together and made alterations to the selector components so that, as it was given to the claimant, it could not fire in the automatic mode. Doesn't it all boil down to what does readily mean in the end? Because they concede that you could, you know, go engineer backwards and turn it into a machine gun. But the question is, can you do it readily? I think that's one component, but I think it also — the government also can meet the definition of designed to fire automatically, because the M14, as originally designed, was designed so that components could be put on it so that it could fire automatically. Because the weapon at issue in this case is essentially made from the receiver of an M14, it retained those design components that allowed it to fire automatically so that it — The 707 airplane that's designed for passengers, and then later you modify it and make it into a KC-135 tanker. Was the 707 designed to be a KC-135 tanker? I mean, it's the same analogy you're using, I think. There is no dispute, there is no issue that the M14 was designed to fire automatically. In this case, the gun was essentially in the process altered so it could not fire automatically. The government established that that process essentially could be changed, and the gun could fire automatically by doing about 45 minutes of work using common hand tools. And that really wasn't in dispute. The only real dispute was the claimants' experts said there would also need to be some welding gun, which maybe would have lengthened the process to up to two hours. But in any event, the gun, because it had the design — it had the original design to be a machine gun, could also be readily restored to be a machine gun. And that's what the government established in this case, and that's why the Court correctly granted the government's motion for summary judgment. My recollection was that it was made from two M14s. Yeah, it was made from basically two. When the government got rid of the M14s — when the M14s were disposed as excess property, essentially, they were cut in half before they were disposed. And the MK Specialties, the company that put these back together, essentially got a bunch of these halves, selected ones that kind of fit well together, and then welded them together and did some — altered the selector mechanism so that it could not fire automatically. Really just taking an M14 that was designed to shoot automatically and then modified so that it couldn't — putting it back to what it originally was. It's really a modification that involves two. There were two halves, yes. I'm not sure. So this is just one gun that is being modified so that it can't shoot automatically and now being restored back so that it can. Is it? No. It's basically — it's conceivable that it is the front half of one gun and the back half of another gun that have been welded together, if that's the Court's question. Oh, I know that's the question, but I — I mean, that — in the deposition of the claimant's expert, who was also the person who put them together. Well, I understand what was done. I'm just saying that your argument about it being an M14 that was converted to shoot not automatically, it's really just a restoration. It's a lot more than that. I think maybe — It's taking two guns and putting them together. Maybe I should make my argument a little clearer, I think. What I'm saying is that by welding the two parts of the receiver together, the receiver as a whole had design components and was designed in a manner that facilitated attaching the selector components so that it could fire automatically. That was kind of built into the receiver. Whether it's made from one piece or two pieces, when the two pieces are put together, they still retain those design components that allow that to be done. And that's why the government was able to restore it so quickly, essentially, because it had that original built-in design feature. What does the term receiver refer to? It's essentially the frame of the gun, you know, without the barrel, without the stock. It's what everything else is kind of hooked to, essentially. The trigger mechanism and so forth? Is that what you mean? Yeah. All that stuff is hooked to the receiver. I have a question about the standard. Suppose that in this civil case, it is determined that this is a machine gun, and a criminal case is then brought against the person who possessed the machine gun, what would have to be proved in the criminal case? Would it be enough that in this civil case it was determined to be a machine gun, or would that only be evidence that had to be eventually proved beyond a reasonable doubt? Well, clearly in a criminal case, the government would have to prove that it was a machine gun by the higher beyond a reasonable doubt standard. Also, in a criminal case, there would be... So just the determination in this civil context couldn't be disimported to the criminal context? No. A civil case could never be conclusive proof in a criminal case. Okay. So, and in a criminal case, also the government would have the intent element that it would have to establish, too, obviously. In this case, all we're dealing with is whether this piece of equipment meets the definition of a machine gun. And again, because of the fact that the government could restore it so quickly, because of the design of the weapon, it meets both fronts of the definition of a machine gun. So you're saying in response to Judge Hugg that it is a fact question in civil, a fact question in the criminal case, as to whether this is a machine gun? Yes. I mean, you've got the standard, you apply the standard to that piece of equipment. Yeah. Not a legal question, but a fact question. Right. But in this case, there was no real factual issue about whether it could be readily restored or not. And that's why the granting of the summary judgment was appropriate. Unless the Court has further questions, my time's up. Mr. Gould, you may have a minute of rebuttal. It's simply not true that there were no facts in dispute about designed or readily restored. Mr. Brown's evidence with regard to design was that the first design feature that the government relied on, the selector stud, that there was no selector stud. And so there is a significant factual dispute which prevents, which should have prevented a summary judgment from being granted in the case with regard to the definition of the interpretation and application of the word designed. Also, there was a dispute about whether the other two features, in fact, had anything to do with the fully automatic capabilities of the firearm. There was also a factual dispute as to the length of the firearm and whether that had any impact on the way it was designed. So there were significant factual disputes that should have precluded the summary judgment with regard to the word designed. And Your Honor is correct that as to the readily restored part, the case really comes down to the meaning of the word readily. And that's why I think the Smith case was so wrongly decided because 8 hours in a well-equipped machine shop by an expert craftsman is just contrary to any reasonable meaning of the word readily. The much better... I would just refer to the court to the Alguilar-Espinoza case. I think that's a far better... Thank you, Your Honor. Thank you. The case of United States v. Brown is submitted. The next case for argument is Pinzon v. Gonzalez.
judges: Hug, Alarcon, McKeown